IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IRA BURDELL WAKEFIELD,<br>Petitioner, | MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY |
| vs. | |
| UNITED STATES OF AMERICA,<br>Respondent. | Civil Case No. 2:11-CV-76 TS<br>Criminal Case No. 2:08-CR-156 TS |

This matter is before the Court on Petitioner Ira Burdell Wakefield's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the reasons discussed below, the Court will deny the Motion and dismiss this case.

## I. BACKGROUND

On March 19, 2008, Petitioner, along with his co-defendant Christopher Noah Mollner, was charged with one count of aiding and abetting a bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a), (d). Petitioner proceeded to trial on April 7, 2009. On April 9, 2009, the jury

returned a guilty verdict against Petitioner. Petitioner was sentenced, on July 1, 2009, to 110 months imprisonment. Judgment was entered on July 8, 2009.

Petitioner appealed his conviction. On appeal, Petitioner argued that there was insufficient evidence to sustain his conviction. The Tenth Circuit Court of Appeals affirmed and issued its mandate on September 3, 2010.

Petitioner timely filed his § 2255 Motion on January 20, 2011. In his Motion, Petitioner raises claims for ineffective assistance of counsel, violation of due process, prosecutorial misconduct, and violation of the Fourth Amendment. Petitioner's claims have several subclaims, each of which will be discussed below.

## II. DISCUSSION

Petitioner brings claims for ineffective assistance of counsel, violation of due process, prosecutorial misconduct, and violation of the Fourth Amendment. Respondent argues that Petitioner's ineffective assistance claims fail and that all other claims are procedurally barred. The Court will first address whether Petitioner's due process, prosecutorial misconduct, and Fourth Amendment claims are procedurally barred before turning to the merits of Petitioner's ineffective assistance of counsel claims.

### A. PROCEDURAL BAR

Respondent argues that Petitioner's due process, prosecutorial misconduct, and Fourth Amendment claims are procedurally barred.

The Supreme Court has ruled that, because "a final judgment commands respect," it has "long and consistently affirmed that a collateral challenge may not do service for an appeal."[1] Generally, "§ 2255 is not available to test the legality of matters which should have been raised on appeal."[2] "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered."[3] Petitioner has not asserted a fundamental miscarriage of justice.[4] Therefore, the Court considers whether Petitioner can show cause and prejudice.

"A defendant may establish cause for procedural default by showing he received ineffective assistance of counsel."[5] In this instance, Petitioner blames his trial counsel for failing to raise his due process, prosecutorial misconduct, and Fourth Amendment claims. Broadly construing these statements as an allegation that counsel was ineffective in failing to raise these claims on direct appeal, the Court finds that they are merely conclusory and fail "to prove cause for failing to raise [these] issue[s] on direct appeal."[6]

---

[1] *United States v. Frady*, 456 U.S. 152, 165 (1982).

[2] *United States v. Khan*, 835 F.2d 749, 753 (10th Cir. 1987); *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994).

[3] *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).

[4] In order to establish a "fundamental miscarriage of justice," Petitioner must make a colorable showing of innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

[5] *Cox*, 83 F.3d at 341.

[6] *Id*.

Assuming that these allegations are sufficient to raise the issue of cause, the Court must consider whether counsel was ineffective. In considering ineffective assistance claims, the Court considers the familiar two-prong test established in *Strickland v. Washington*.[7] In order to establish a successful claim for ineffective assistance of counsel, Petitioner must show (1) that counsel's performance was deficient; and (2) that this deficient performance was prejudicial.[8]

When the basis of an ineffective-assistance claim is the failure by appellate counsel to raise an issue on appeal, "we must look to the merits of the omitted issue."[9] "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."[10] If counsel was not ineffective in failing to raise a claim on appeal, a defendant cannot satisfy the cause requirement to excuse his procedural default of the claim.[11]

*1. Due Process*

In his due process claim, Petitioner alleges that: (1) the government withheld surveillance video taken at a nearby store; (2) the government withheld a police interview of Petitioner and corresponding FBI reports; (3) the government failed to disclose police dash-cam videos and reports; (4) a photo line-up was not presented; (5) all dispatch and 911 calls were

---

[7]466 U.S. 668 (1984).

[8]*Id*. at 687.

[9]*United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

[10]*Id*.

[11]*United States v. Challoner*, 583 F.3d 745, 750 (10th Cir. 2009) (holding that petitioner had "not demonstrated that his attorney was ineffective" and, thus, had "failed to show cause excusing the procedural default").

missing; (6) he did not receive all information concerning warrants related to cell phones; and (7) he never received discovery concerning his co-defendant.

Through his Motion, it appears that petitioner is attempting to assert a claim that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*.[12] "In order to establish a *Brady* violation, a habeas petitioner must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense."[13] The "touchstone of materiality is a reasonable probability of a different result, which exists when the government's evidentiary suppression undermines confidence in the outcome of the trial."[14] With this standard in mind, the Court will consider each piece of evidence the government allegedly failed to disclose.

Petitioner first argues that the government withheld surveillance video taken from a nearby store. This surveillance video allegedly showed Petitioner as the driver of the suspect vehicle. Petitioner opines that the video does not in fact show him or it would have been used at trial. Petitioner's claim fails on the third *Brady* prong set forth above. Petitioner's defense at trial was that the government's evidence was insufficient.[15] Surveillance video of a nearby store, even if it did not show Petitioner, would not have been material to his defense. Such evidence,

---

[12]373 U.S. 83 (1963).

[13]*Snow v. Sirmons*, 474 F.3d 693, 711 (10th Cir. 2007) (citation omitted).

[14]*Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (quotation marks and citation omitted).

[15]Docket No. 12-1, ¶ 11.

even if it did exist and was withheld by the government, does not create a reasonable probability of a different result.

Petitioner next contends that the government failed to provide a recording of an interview conducted with Petitioner and corresponding FBI reports. This claim also fails the materiality test. The government has represented, and Petitioner has not disputed, that Petitioner refused to speak to law enforcement and, thus, any interview and FBI reports would not contain material information.

Petitioner also argues that arrest reports and dash-cam videos were not provided. However, the government has stated, and Petitioner has not contested, that this evidence was provided in discovery. Petitioner's trial counsel confirms that the government provided all discovery materials.[16] Indeed, the Utah Highway Patrol video of the stop was presented at trial. Thus, Petitioner has provided nothing but conclusory allegations that the government actually suppressed this evidence. Additionally, any other dash-cam videos would have been duplicative of the dash-cam videos provided. Therefore, they could not be considered material.

Petitioner's final three arguments are that he did not receive information relating to a photo line-up, that he did not receive all information related to the warrant, and that he did not receive discovery relating to his co-defendant. As stated, however, the evidence presented shows that Petitioner and his counsel were provided all discovery. Therefore, there is nothing to substantiate the claim that the government withheld any material evidence. Nor has Petitioner shown that any of this evidence was material.

---

[16] *Id.* ¶¶ 3-4.

Based on the above, the Court finds that all of Petitioner's due process claims are without merit. As these claims are without merit, counsel was not ineffective for failing to raise them on appeal and Petitioner has not shown cause to overcome his procedural default.

*2. Prosecutorial Misconduct*

Petitioner's next set of claims concern prosecutorial misconduct. To succeed on a claim of prosecutorial misconduct, Petitioner must show that "there was a violation of [his] federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process."[17]

Petitioner argues that the prosecution: (1) falsely portrayed and/or presented evidence in a fraudulent manner; (2) tampered with and falsely portrayed evidence in a fraudulent manner; and (3) withheld favorable evidence. The Court will address each claim in turn.

Petitioner's first argument concerns a statement made by the prosecution during closing arguments. Petitioner asserts that during closing arguments, the prosecutor stated "This phone, the only phone taken was the defendants [sic] and it shows his whereabouts that day."[18] Petitioner argues that multiple phones were taken and that, by his statement, the prosecutor lied to the Court and to the jury.

A review of the transcript of the closing argument reveals that the prosecutor made no such statement. Rather, the prosecutor commented that Petitioner's phone, a silver Motorola

---

[17] *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994).

[18] Docket No. 1, Supplement Ex. C, at 1.

Razr, was found in the van and that evidence from cell phone towers showed the phone followed a particular course around the time of the robbery.[19]

This statement was based on the testimony of Detective Hubbard. Detective Hubbard testified that Petitioner had requested that officers retrieve his cell phone from the dash of the van.[20] As there were two cell phones on the dash, Detective Hubbard sought clarification and Petitioner indicated that the silver Motorola Razr was his phone.[21] Thus, the prosecutor's comment concerning the phone was entirely consistent with the evidence presented at trial. Therefore, the Court can find no prosecutorial misconduct in this instance.

Petitioner's second argument concerns the prosecutor's statements regarding a coat worn by Petitioner. Petitioner argues that the prosecutor showed the jury the coat worn by his co-Defendant at the time of his arrest and portrayed the coat as being worn by Petitioner. Such a statement is also supported by the record. The evidence presented at trial was that an individual, identified as Petitioner, purchased a BB gun at a Wal-Mart store while wearing a dark blue jacket. There was also evidence presented that, at the time of his arrest, Petitioner's co-defendant was wearing an identical jacket. Thus, there is no prosecutorial misconduct in drawing the jury's attention to the jacket.

Petitioner's final contention is that the prosecution withheld favorable evidence. Petitioner does not cite to any particular piece of evidence that he believes the government failed

---

[19]Docket No. 96, at 255-59.

[20]Docket No. 95, at 139.

[21]*Id.*

to provide. To the contrary, as set forth above, Petitioner's counsel represents that all discovery was provided. Therefore, this claim is without merit.

Based on the reasoning set forth above, the Court finds that Petitioner's prosecutorial misconduct claims are without merit. As these claims are without merit, counsel was not ineffective for failing to raise them on appeal and Petitioner has not shown cause to overcome his procedural default on these claims.

*3. Fourth Amendment*

Petitioner claims that: (1) the stop was illegal; (2) a government witnesses committed perjury; (3) the police tampered with evidence and with the crime scene; and (4) the police illegally used seized cell phones to obtain a warrant.

Petitioner first argues that his stop was unlawful. "A traffic stop is a seizure within the meaning of the Fourth Amendment."[22] The Court analyzes such stops under the principles set out in *Terry v. Ohio*.[23] "To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'"[24]

"It is well settled that an investigative stop is justified where police officers have a reasonable, articulable suspicion that the detainee has been, is, or is about to be engaged in

---

[22] *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995).

[23] *Id*. (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[24] *Id*. (quoting *Terry*, 392 U.S. at 20).

criminal activity."[25] "The presence of reasonable suspicion is not determined by any one factor, but by the totality of the circumstances."[26]

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.[27]

"Thus, as long as [the officer] has a particularized and objective basis for suspecting an individual may be involved in criminal activity, he may initiate an investigatory detention even if it is more likely than not that the individual is not involved in any illegality."[28]

In this instance, it is clear that the stop was justified at its inception and was reasonably related in scope to the circumstances which justified the interference in the first place. The evidence presented at trial was that Sergeant Nelson received an attempt to locate call shortly after noon on the day the credit union was robbed. Dispatch "put out an attempt to locate for two armed robbery suspects driving a white newer model minivan with a black stripe down the side."[29] The call indicated that the robbery had occurred at approximately 11:15 a.m. and, from experience, the officer knew that it took about an hour and 15 minutes to travel the distance

---

[25] *United States v. Elkins*, 70 F.3d 81, 83 (10th Cir. 1995).

[26] *Id*. (quotation marks and citations omitted).

[27] *United States v. Tuter*, 240 F.3d 1292, 1296 n.2 (10th Cir. 2001).

[28] *Johnson*, 364 F.3d at 1194.

[29] Docket No. 95, at 64. This description matches a description of the suspect vehicle given by another witness at trial, Mr. Verhoef.

between the location of the robbery and the location of the officer. Thus, if the suspects were headed in his direction, the officer reasoned that he would see them shortly.

Shortly after receiving the attempt to locate call, Sergeant Nelson "noticed a white newer model minivan with a black stripe down the side with two males in the front seats."[30] Sergeant Nelson proceeded to follow the vehicle, but did not want to initiate a stop until backup arrived because it was reported that the suspects were armed. When Sergeant Nelson began following the van, the van "suddenly veered off the road across the oncoming lane of traffic and went into a view area and came to a sudden stop."[31] The driver, identified as Petitioner, got out of the car and threw open the passenger door on the driver's side. The officer believed that he was "going for a weapon."[32]

Because of this sudden stop, the fact that it was reported that the suspects were armed, and Petitioner's sudden emergence from the van, Sergeant Nelson got out of his car, drew his weapon, and told Petitioner to put his hands up. The officer then ordered the passenger out of the vehicle and ordered both the driver and passenger to the ground.

Based on this evidence, the Court finds that the officer had reasonable suspicion to stop the vehicle. The officer had received a call indicating that a robbery had occurred and that two armed suspects were traveling in a white, newer model minivan with a black stripe down the side. The officer saw a van matching the description of the suspect vehicle and began to follow it

---

[30] *Id*. at 66.

[31] *Id*.

[32] *Id*. at 68.

when the driver made erratic movements and jumped out of the vehicle. The Court finds that this constitutes reasonable suspicion to initiate a stop.[33] The Court further finds that the methods used, such as Sergeant Nelson drawing his weapon, were reasonably related in scope to the circumstances that justified the interference in the first place and the events thereafter. Therefore, the Court finds that Petitioner's Fourth Amendment claim on this ground is without merit.

Petitioner's next contention is that Sergeant Nelson committed perjury. Petitioner states that Sergeant Nelson testified that he only entered the vehicle one time, but the dash-cam video shows him enter the vehicle three times. The Court has reviewed the transcript and cannot find any testimony from Sergeant Nelson indicating that he only once entered the suspect vehicle. In any event, the dash-cam video was played for the jury and was entered into evidence. Thus, the jury had the ability to view the video and compare it with Sergeant Nelson's testimony and assess the officer's credibility in light of any inconsistent statement. Therefore, this argument is without merit.

Petitioner's third argument is that Sergeant Nelson tampered with the crime scene by removing the weapon from the vehicle. The Court is unable to see how the securing of the weapon violated Petitioner's Fourth Amendment rights. This action by the officers seems only sensible considering the circumstances. Therefore, this argument is without merit.

---

[33]The Court notes that the officer did not actually initiate the stop and that Petitioner voluntarily stopped the vehicle. Regardless, the Court finds that reasonable suspicion existed to effectuate a stop.

Petitioner's final argument is that the officers who searched the vehicle actually seized four cell phones, not just two. Petitioner also alleges that the officers used these cell phones to gather evidence prior to obtaining a warrant. This argument, however, is not based on anything but Petitioner's conclusory statements and suppositions. Therefore, the Court finds it is without merit.

Based on the discussion set forth above, the Court finds that Petitioner's Fourth Amendment claims are without merit. As these claims are without merit, counsel was not ineffective for failing to raise them on appeal and Petitioner has not shown cause to overcome his procedural default on these claims.

B. INEFFECTIVE ASSISTANCE

Petitioner also brings a number of ineffective assistance of counsel claims. As stated, to prevail on an ineffective assistance claim, Petitioner must show (1) that counsel's performance was deficient; and (2) that this deficient performance was prejudicial.[34]

First, Petitioner must show that counsel functioned deficiently.[35] "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[36] Second, he must show that counsel's deficient functioning prejudiced Petitioner's defense.[37] "This requires showing that counsel's errors were so serious as

---

[34] *Strickland*, 466 U.S. at 687.

[35] *Id*.

[36] *Id*.

[37] *Id*.

to deprive [Petitioner] of a fair [proceeding], . . . whose result is reliable."[38] Without both of these showings, Petitioner may not prevail in arguing that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable."[39]

A Court is to review Petitioner's ineffective assistance of counsel claim from the perspective of his counsel at the time he or she rendered the legal services, not in hindsight.[40] In addition, in evaluating counsel's performance, the focus is "not what is prudent or appropriate, but only what is constitutionally compelled."[41] Finally, there is "a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[42]

Petitioner first argues that counsel was ineffective for failing to file a motion for discovery. As set forth above in relation to his due process claim, Petitioner alleges that the government failed to provide certain information. However, as discussed, Petitioner has failed to show that the government failed to provide any material evidence. Further, the prosecution in the case had an open file policy and Petitioner's trial counsel has indicated that the government complied with this policy.[43] As a result, no motion for discovery was necessary and the Court

---

[38] *Id.*

[39] *Id.*

[40] *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[41] *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[42] *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2002) (citation omitted).

[43] Docket No. 12-1, ¶¶ 3-4.

cannot find that counsel's performance was deficient. Additionally, as there is nothing to suggest that material evidence was withheld, Petitioner has failed to show that any failure to file a motion for discovery was prejudicial.

Petitioner next argues that counsel was ineffective for failing to file certain motions, specifically a motion to suppress, a motion for evidentiary hearing, and a motion for subpoenas. As set forth above in relation to Petitioner's Fourth Amendment claim, there were no grounds on which to file a motion to suppress based on the stop of the vehicle. Petitioner's counsel, after reviewing the relevant discovery, reached this same conclusion.[44] Petitioner has cited to no other evidence that he believes should have been the subject of a suppression motion. Therefore, the Court cannot find that counsel's performance was deficient in this regard. As for other evidentiary motions, Petitioner has failed to identify what motions counsel should have filed and how they may have impacted his case. Therefore, Petitioner has failed to show prejudice. Petitioner's claim that counsel should have filed a motion for subpoenas fails for the same reason. Petitioner has failed to set forth who counsel should have subpoenaed, what their testimony would be, and how it would have benefitted him. Without more, Petitioner cannot prevail on an ineffective assistance claim.

Petitioner's third ineffective assistance claim is that counsel failed to follow-up on or obtain evidence that Petitioner had requested. Petitioner specifically points to the surveillance video from a nearby store and the dispatch and 911 calls. The surveillance video evidence is discussed above and, for the reasons stated, the Court finds that the evidence is immaterial and

[44] *Id.* ¶ 6.

counsel was not ineffective for failing to obtain it. Further, Petitioner can show no prejudice. As to the 911 and dispatch calls, there were no 911 calls as the case was initiated by the activation of an alarm. Further, counsel has indicated that the contents of the dispatch calls were provided in the police reports provided by the government.[45] Thus, the Court cannot find counsel's performance to be deficient.

Petitioner next argues that counsel was ineffective for not meeting with Petitioner to discuss and view the video and photographic evidence that was ultimately presented at trial. Counsel, however, indicated that he did discuss this evidence with Petitioner and that Petitioner acknowledged the purchase of the BB gun and did not dispute the video evidence.[46] Thus, Petitioner acknowledged to his counsel that he did not need to view the video.[47] Even if the Court were to find deficient performance, Petitioner has provided nothing to suggest that this alleged failure on the part of counsel prejudiced him in any way. Therefore, this argument fails.

Petitioner also argues that counsel failed to adequately prepare for trial and/or keep Petitioner appraised of his preparations. Counsel's preparations for trial and his interactions with Petitioner are detailed in his affidavit.[48] Having been present at trial, the Court finds that counsel was well prepared and provided Petitioner a vigorous defense. Petitioner has failed to point to anything specific that counsel allegedly failed to do as a result of his inadequate preparation. Nor

---

[45] *Id*. ¶ 10.

[46] *Id*. ¶ 12.

[47] *Id*.

[48] *Id*. ¶¶ 13-14.

has he shown how the alleged inadequate preparation and/or alleged failure to consult with Petitioner has prejudiced him in any way. Therefore, the Court must reject this claim.

Petitioner's next argument is a continuation of the previous. Specifically, Petitioner argues that his counsel failed to adequately prepare his case and points to instances where counsel confused the name of Petitioner and his co-defendant, mistakenly stated the incorrect name of the store where purchases were made, and referred to the credit union as a bank. The Court cannot find that these misstatements constitute deficient performance. Even if counsel's performance in this regard was deficient, Petitioner has failed to show how these misstatements prejudiced him. Therefore, the Court will reject this claim.

Petitioner's final ineffective assistance claim alleges that counsel violated the attorney-client privilege and assisted the government in fixing a portion of the cell phone tracking map. Petitioner is apparently referring to a map provided in discovery that contained a misprint of Petitioner's cell phone number. Petitioner's claim, however, is based on mere speculation and is unsupported by anything in the record. Therefore, the Court must reject this claim.

## III. CONCLUSION

It is therefore

ORDERED that Petitioner's § 2255 Motion (Docket No. 1 in Civil Case No. 2:11-CV-76) is DENIED. It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing § 2255 Cases, an evidentiary hearing is not required.

The Clerk of the Court is directed to close this case forthwith.

DATED May 10, 2012.

BY THE COURT:

______________________________
TED STEWART
United States District Judge